UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MARGARITA LÓPEZ TORRES, et al.,

          Plaintiffs,

    - against -        ORDER
                04 CV 1129 (JG)

NEW YORK STATE BOARD OF ELECTIONS, et al.,

          Defendants,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JOHN GLEESON, United States District Judge:

    On January 27, 2006 I issued a preliminary injunction in this case, requiring, pending trial on the merits, that the nomination of candidates for Supreme Court Justice be by primary election until the New York legislature enacts a new scheme. That order deferred the question of what petitioning requirements should apply for access to the primary ballot, affording the parties an opportunity to be heard on the matter. Argument was held on February 14, 2006, and I took the matter under advisement after the Board of Elections requested a brief delay to permit it to offer its judgment as to what petitioning requirements Election Law § 6-136 would generate if applied to judicial-district-wide primaries.[1]

    At the same proceeding, the defendants moved orally for a stay of the preliminary injunction pending their interlocutory appeal of that order. Upon the subsequent submission of briefs on that question, the parties in effect agreed to a stay of the preliminary injunction for the 2006 election cycle, which I granted by order dated March 3, 2006.

---

[1] Section 6-136 sets forth the number of signatures required for designating petitions for various offices.

The Board of Elections concluded that the stay extinguished (or at least postponed) its obligation to provide the court with its proposed petitioning requirements. In a letter dated March 17, 2006, the plaintiffs argued that the petitioning requirements issue should be resolved immediately, enabling the court of appeals to address it in the pending appeal. To that end, the plaintiffs provided their own advice as to the petitioning requirements § 6-136 would generate. Noting the anomalous and (in certain districts) onerous results, the plaintiffs argued that the petitioning requirements in Election Law § 6-142 would provide a more sensible solution.

The defendants have not objected to the plaintiffs' projected application of § 6-136 as such, but rather have taken the opportunity to reiterate their argument that the Court has no choice but to apply § 6-136 unless that provision is itself held to be unconstitutional.

I agree with the plaintiffs that there is no need for delay in disposing of this issue, and for the reasons set forth below I also agree that § 6-142 provides the most reasonable guidance in fashioning the petitioning requirements for judicial-district-wide primaries.

A brief explanation of the statutory scheme is appropriate. First, § 6-106 provides that "Party nominations for the office of justice of the supreme court shall be made by the judicial district convention," and § 6-124 sets out the details of how those conventions are to function. These provisions, the enforcement of which I have preliminarily enjoined, make clear that the New York legislature did not contemplate that candidates for Supreme Court Justice would run in primary elections. Section 6-110, therefore, which provides that "[a]ll other party nominations of candidates for offices to be filled at a general election, except as provided for herein, shall be made at the primary election," does not evidence the legislature's intent that, in

the event §§ 6-106 and 124 were held unconstitutional, § 6-110 should govern and primaries should be held.

Nonetheless, the defendants argue that § 6-136 "on its face applies to all primaries" and that the plaintiffs "have failed to produce any evidence or legal authority to support their proposition that El. L. 6-136 was not intended to apply to elections for Supreme Court Justice." Def. Letter of March 22, 2006. They support their argument by pointing to a provision of the New York Laws of 1911, Ch. 891 § 48, which governed designating petitions for primary elections for the office of Supreme Court Justice between 1911 and 1921 and from which they contend the current § 6-136 is "directly derived." *Id*. Regardless of its ancestry, however, the current § 6-136 resembles the 1911 provision very little. The 1911 provision required that designating petitions be signed by the *greater* of "five per centum of the total enrolled voters of such party within the district, within which such office ... is to be filled" and "four per centum of the total vote cast in that political subdivision for the party candidate for governor at the last preceding gubernatorial election." By contrast, § 6-136 requires that designating petitions, other than for statewide office, be signed by the *lesser* of "five per centum ... of the then enrolled voters of the party residing within the political unit in which the office or position is to be voted for," and any one of 12 more specific signatures requirements pertaining to particular political subdivisions and offices, which cover almost every extant political subdivision in New York, except, notably, judicial districts.

The defendants' argument that I must derive the petitioning requirements attending the preliminary injunction from § 6-136 unless it is held to be unconstitutional as applied incorrectly views § 6-136 in complete isolation. Section 6-136 does purport to apply to

3

all primaries, as the defendants say, but it does not define what offices are subject to primary elections. As I have explained above, § 6-110 does that work, but with specific exceptions, including §§ 6-106 & 124 providing for judicial conventions for the office of Supreme Court Justice. It cannot be said, as the defendants assume, that the legislature intended § 6-136, in anything like its current form, to apply to primaries for Supreme Court Justice because no such primaries were contemplated. Section 6-136, like § 6-110, does not govern, cover, or apply to this situation as those terms are typically understood in statutory interpretation. At most, § 6-136, like the rest of Article 6 of the New York Election Law, may provide some evidence of what the legislature would have wanted had it anticipated the preliminary injunction in this case.

As the plaintiffs point out, however, use of § 6-136 as a proxy for legislative intent in this situation would generate anomalous results. The parties appear to agree the following requirements would pertain:

| Judicial District | Signatures (§ 6-136) |
|---|---|
| 1st | 4,000 |
| 2nd | 7,500 |
| 11th | 4,000 |
| 12th | 4,000 |
| 3rd | 3,750 |
| 4th | 3,750 |
| 5th | 3,750 |
| 6th | 4,500 |
| 7th | 5,500 |
| 8th | 5,000 |

4

| 9th  | 6,250 |
| 10th | 4,000 |

Downstate, this configuration would require candidates in the Tenth Judicial District (comprised of Nassau and Suffolk Counties) to gather only 4,000 signatures, while in the Ninth District, which is also just outside New York City, candidates would be required to gather 6,250 signatures, even though the Tenth District has significantly higher enrollment in both the Democratic and Republican Parties. Within New York City, candidates in the Second Judicial District (Kings and Richmond Counties) would be required to gather 7,500 signatures, almost twice as many as candidates in the First (New York County), Eleventh (Bronx County) and Twelfth (Queens County) Judicial Districts.

Upstate, the results are no more normal. For example, candidates in the Sixth District, which has less than half the total enrollment of, say, the First or the Eleventh districts, would be nonetheless required to gather 500 more signatures than candidates in those districts. Candidates in the Seventh District would be required to gather 500 more signatures than those in the neighboring and more populous Eighth District.

The defendants have offered no rational explanation as to why such seemingly random disparities should have any place in a primary election ordered as an equitable remedy for constitutional violations, nor have they made a persuasive argument as to why the New York legislature, had it divined that §§ 6-106 and 124 would be struck down, would have wanted such strange petitioning requirements. *Cf. United States v. Booker*, 543 U.S. 220, 246 (2005) ("We seek to answer the remedial question by .... seek[ing] to determine what Congress would have

intended in light of the Court's constitutional holding" striking down certain provisions of a statutory scheme.).

The plaintiffs argue that § 6-142, which governs the signature requirements for independent candidates to petition onto the general election ballot, provides a better guide. That section already applies to general elections for Supreme Court Justice, and thus it is clear the legislators who enacted it gave thought to the judicial districts. Although § 6-142 appears on the whole quite similar to § 6-136, two key differences evidence how the general scheme has been adapted to correct the irregularities mentioned above when § 6-136 is applied to judicial districts. First, subsection § 6-142(2)(b-1) provides that "for any office to be filled by all the voters of any two counties in [New York City], four thousand" signatures are required, thus bringing the requirements for the Second Judicial District in line with the other districts within New York City.[2] Second, § 6-142(2) provides that "not more than three thousand five hundred signatures shall be required upon any such petition for any office to be filled in any political subdivision of the state wholly outside the city of New York," thus reconciling the irrational discrepancies § 6-136 would create between the upstate districts as well as between the Ninth and Tenth districts just outside New York City.

In sum, I am persuaded that the legislature would have intended that the signature requirements of § 6-142(2), or something closely akin thereto, govern the designation of major party candidates for the primary election ballot I have ordered. The preliminary injunction is accordingly supplemented to reflect that for the 2007 election cycle, candidates in the First,

---

[2] According to the plaintiffs, there is no office other than Supreme Court Justice in the Second Judicial District to which § 6-142(2)(b-1) applies.

Second, Eleventh, and Twelfth districts shall be required to obtain 4,000 signatures for designation on the primary ballot. Candidates in all other districts shall be required to obtain 3,500 signatures.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
April 7, 2006